IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SAGE M. GEDDES on behalf of
ANN MARIE GEDDES,

                                                    OPINION AND ORDER

                            Plaintiff,

                                                        13-cv-312-bbc

                v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security

                            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff Sage Geddes has brought this suit for administrative review under the Social

Security Act, 42 U.S.C. § 405(g), on behalf of his deceased mother, Ann Geddes, who was

the claimant in this case.  (Ann Geddes committed suicide on March 22, 2013, four months

after the administrative hearing in this case.  Dkt. #17 at 1.)  Plaintiff contends that the

administrative law judge who denied his mother disability insurance and supplemental

security income benefits erred in three respects: (1) making a flawed credibility assessment;

(2) failing to give proper consideration to the opinion of Maureen Geddes, claimant's

mother; and (3) failing to give proper weight and consideration to the opinion of Dr.

Brockmann, one of claimant's treating physicians.

        The administrative law judge discounted claimant's self-reports and the opinions of

her mother and treating physician primarily because he found them inconsistent with the

1

medical record as a whole.  He did not err in this respect.  However, I find that he failed

failed to articulate his findings properly and did not consider important contradictory

evidence in the record.  Accordingly, I am reversing his decision and remanding this case.

The following facts are drawn from the administrative record (AR).

FACTS

A.  Procedural History

Claimant Ann Geddes, who was 40 years old at the time, filed an application for

social security disability insurance benefits on September 30, 2010, and an application for

supplemental security income on November 8, 2010.  AR 19, 85.  In those applications, she

alleged that she had been disabled since June 1, 2010, citing the following conditions:

bipolar disorder, migraines, depression, anxiety, post traumatic stress disorder and various

other mental and physical impairments.  AR 19, 214.  The local disability agency denied her

application on February 18, 2011, and again upon reconsideration on September 9, 2011.

AR 19.   She requested a hearing, which was held on November 8, 2012 before

Administrative Law Judge Roger Thomas.  AR 19, 32.

Claimant, a medical expert and a vocational expert all testified at the hearing.  AR 38.

Because the allotted time for the hearing had expired, the administrative law judge did not

take testimony from claimant's mother, Maureen Geddes.  AR 82.  However, he agreed to

keep the record open and accept a written statement from Maureen Geddes after the close

of the hearing.  Id.

In a written decision dated December 11, 2012, the administrative law judge found that claimant suffered from the severe impairments of degenerative changes of the lumbar spine, bipolar affective disorder, anxiety disorder and polysubstance abuse in remission.  AR 21.  Relying on the opinions of the medical expert and the state agency physicians, he determined that claimant was capable of performing simple, unskilled medium work limited to simple instructions; no rapid pace or high production requirements (such as factory line assembly); no more than brief, superficial contact with others; no work where public contact is the primary part of the job; and no work where drugs and alcohol are sold or served.  AR 24, 74-75.  After consulting the vocational expert, the administrative law judge concluded that a person with claimant's residual functional capacity could perform work as a custodian, auto detailer and machine feeder.  AR 31.

## B.  Medical History

Claimant had a long history of mental illness.  In December 2004, she received involuntary inpatient treatment for suicidal ideation and paranoia, and in March 2005, she received voluntary inpatient treatment for mania and paranoia.  AR 591-92, 655.  Claimant also had a history of drug and alcohol abuse, which was in remission by June 2009, a year before her alleged disability onset date.  AR 292, 541.  On March 21, 2005, claimant was given a diagnosis of bipolar disorder and began taking medications.  AR 555-56.

Between June 2009 and April 2011, claimant saw a therapist, Richard Brunner, and a psychiatrist, Dr. Shezad Niazi.  AR 291-348.  Although she struggled with fatigue, anxiety

and mild depressive symptoms during that period, her polysubstance abuse was in full remission, her bipolar disorder was in partial remission, her mood was stable and her mental status exams were unremarkable.  Id.  Claimant reported worries about her son and his trouble with the law.  She also had relationship problems with her boyfriend and difficulties with her jobs.

On June 15, 2010, claimant reported that she had lost her job at a bar, AR 333-34, and on July 27, 2010, she reported that the grant supporting her position as a teacher of English as a Second Language had ended, AR 339-41.  When claimant saw Brunner on November 4, 2010, she reported having difficulty finding a new job because of her struggles with bipolar disorder.  AR 345.  In January and March 2011, she indicated she was still looking for employment.  AR 382, 394.  On April 19, 2011, Brunner noted that claimant's Medical Assistance would be ending and that she would have to find a new therapist through the County of Washburn patient assistance program.  AR 396-99.  At that visit, claimant reported having increased anxiety when she left home and general problems concentrating. Id.

On October 24, 2011, claimant began seeing Dr. Kent Brockmann and reported doing the best she had in years.  She did note, however, that she experienced a lot of anxiety when she left the house.  AR 539-42.  After missing a few appointments, claimant saw Brockmann again on January 9, 2012, when she reported that stressors in her life were increasing her symptoms and that she had had a hallucination.  She was otherwise stable and had an unremarkable mental status examination.  AR 536-37.

4

On March 19, 2012, Brockmann noted that two weeks before the appointment, claimant had run out of two of her medications, and for an unknown reason, also stopped taking her other medications at that time.  AR 534.  A week after this, she had a seizure-like event.  Claimant started taking her medications again on March 15, 2012, four days before her appointment with Brockmann.  AR 534-35.

On April 16, 2012, Dr. Brockmann's office noted that claimant's telephone was not accepting calls.  AR 533.  Claimant did not make contact with Brockmann for several months.  On June 11, 2012, she saw Brockmann and told him she had been off her medications for a couple of months, which had led to serious conflicts with her son and boyfriend.  After breaking up with her boyfriend, she went to his home, knocked on all of the windows and threw things around his house.  Claimant also reported that someone had "hacked" her computer and phone and obtained a lot of information about her.  AR 531-32.

There are no other progress notes from Dr. Brockmann in the record.  However, on November 5, 2012, he completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" in which he indicated that claimant had marked difficulties in making judgments on simple and complex work-related decisions; understanding, remembering and carrying out complex instructions; interacting with the public, supervisors and co-workers; responding appropriately to usual work situations and changes in routine work settings.  AR 716-18.  Dr. Brockmann indicated that claimant had only mild difficulties in understanding, remembering and carrying out simple instructions.  AR 716.  He also wrote that claimant was noncompliant with her medications and using illegal drugs,

including methamphetamine and synthetic stimulants, which made her symptoms worse. Id. at 716-17.  Dr. Brockmann stated that "[w]ithout proper treatment of her drug abuse and sobriety I cannot determine the extent of her illness."  Id. at 717.


OPINION

Plaintiff challenges three aspects of the administrative law judge's decision:  his reliance on a flawed credibility assessment that was unsupported by the record; his failure to give proper consideration to the lay witness statement of Maureen Geddes; and his failure to give Dr. Brockmann's opinion controlling weight.


A.  Credibility Assessment

In his written decision, the administrative law judge indicated that he did not believe claimant's accounts of the disabling effects of her mental health conditions because of "significant inconsistencies in the record as a whole." AR 26.  He noted the following:

- Claimant had relatively sporadic mental health treatment and did not see her psychiatrist between July and October of 2010 when she reportedly was "dealing with stressors" and "doing 'alright' the majority of days."  AR 27 (citing AR 342-43).

- Claimant's mental health status examinations were unremarkable in 2010 and 2011.  AR 27 (citing AR 384-90, 396-97, 531, 536, 541).

- Claimant did not always take her medications.  AR 27-28 (citing AR 531).

- Claimant's primary difficulties related to her ongoing worries about her son.  AR 28 (citing AR 291-348, 373-99, 536).

6

- Claimant's daily activities were consistent with the ability to perform work within the residual functional capacity assessment.

- Claimant stopped working in July 2010 because of a business-related layoff and had not deteriorated significantly since that time.  AR 28 (citing AR 339).

- Claimant had continued to look for work since her alleged onset date, indicating that she believed she was able to work.

- Claimant's work history was sporadic prior to her alleged onset date, indicating that there were other, non-disability reasons for her unemployment.  AR 28 (citing AR 203).

In reaching these conclusions, the administrative law judge looked to claimant's treatment during 2010 and 2011, when she was doing fairly well on her medications and was either working or looking for work.  However, the record makes clear that claimant's condition took a turn for the worse in 2012, when she reported increased stress and anxiety, paranoia, a hallucination and a seizure event.  Claimant stopped taking her medications for two weeks for no reason in March 2012 and then lost contact with Dr. Brockmann for several months.  During her last office visit with Brockmann on June 11, 2012, she stated that she had been off her medications again for a couple of months, which led to inappropriate and violent behavior.  Although claimant indicated that she wanted to resume taking her medications, Dr. Brockmann wrote on November 5, 2012 that she was noncompliant with her medications and using illegal drugs, including methamphetamine and synthetic stimulants, which made her symptoms worse.  Claimant's testimony and Maureen Geddes's statements also show that claimant had worsening symptoms.

The administrative law judge did not discuss claimant's apparent decline in any depth, noting only that claimant's behavior was inappropriate when she "decided to go off her medications" and that her "mental status was stabilized on medications" by the time of the June 2012 visit with Brockmann.  He makes no mention of Brockmann's observations in November 2012, dismissing the report as inconsistent with his earlier mental status examinations of claimant.  (This issue will be discussed in further detail below in the section entitled "Treating Physician Opinion.")  Although the administrative law judge relied heavily on the opinions of the medical expert and the state agency physicians, none of them mention Dr. Brockmann's 2012 reports.  The state agency opinions are dated February 18 and September 9, 2011, well before claimant's apparent decline, and the medical expert failed to mention any treatment records from 2012 in her testimony.  AR 70-75, 349-51, 519-21.

Although the administrative law judge focused on claimant's noncompliance with treatment, he failed to consider what may have caused her to stop taking her medications or even whether her symptoms would have remained under control had she not stopped the medications.  As plaintiff points out, Social Security Ruling 96-7p provides that "the adjudicator must not draw any inferences about an individual's symptoms and the functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain [infrequent treatment]."  SSR 96-7p.  See also Shauger, 675 F.3d at 696-97 ("Although a history of sporadic treatment or failure to follow a treatment plan can

undermine . . . credibility, an [administrative law judge] must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.").

The Court of Appeals for the Seventh Circuit has "often observed that bipolar disorder . . . is by nature episodic and admits to regular fluctuations even under proper treatment." Jelinek v. Astrue, 662 F.3d 805, 814 (7th Cir. 2011) (citing cases). See also Martinez v. Astrue, 630 F.3d 693, 697 (7th Cir. 2011) ("people with serious psychiatric problems are often incapable of taking their prescribed medications consistently").  As a result, the court of appeals has directed administrative law judges who are evaluating claimants with bipolar disorder to "consider possible alternative explanations before concluding that non-compliance with medication supports an adverse credibility inference." Id.  In this case, the record shows multiple changes to claimant's medications throughout 2011 and 2012 as well as concerns about side effects and ineffectiveness of the drugs, a lack of insurance or other funding to pay for drugs, worsening symptoms in 2012 and compliance issues apparently resulting from claimant's mental illness and possible drug use. Jelinek, 662 F.3d at 814 (citing similar concerns that administrative law judge should consider on remand).  In this case, I find that the administrative law judge erred in not considering any of these reasons as possible explanations for claimant's sporadic treatment and noncompliance.

The administrative law judge's references to claimant's sporadic work history and daily activities also fail to offer sufficient support for his credibility determination.  The administrative law judge assumed that because claimant had trouble holding down a job in

the past, there were other non-disability reasons for her unemployment.  However, claimant

had been suffering from bipolar disorder since at least 2005 and was heavily medicated.  As

the Court of Appeals for the Seventh Circuit has noted,

> A person who has a chronic disease, whether physical or psychiatric, and is
> under continuous treatment for it with heavy drugs, is likely to have better
> days and worse days; that is true of the plaintiff in this case.  Suppose that half
> the time she is well enough that she could work, and half the time she is not.
> Then she could not hold down a full-time job.  That is likely to be the
> situation of a person who has bipolar disorder that responds erratically to
> treatment.

Bauer v. Astrue, 532 F.3d 606, 609 (7th Cir. 2008) (internal citations omitted).

As plaintiff notes, an administrative law judge "may consider a claimant's daily

activities when assessing credibility, but [he] must explain perceived inconsistencies between

a claimant's activities and the medical evidence."  Jelinek, 662 F.3d at 812-13 (internal

citations omitted).   In this case, the administrative law judge summarily stated that

"claimant's ongoing activities are consistent with the ability to perform work within the

residual functional capacity defined above."  AR 28.  He then mentioned that she enjoyed

gardening in 2010, maintained her home and cared for her son and a pet, which require the

ability to maintain focus and consistency.  However, claimant's son was in his late teens and

was either incarcerated or living with his girlfriend during much of the relevant period.

Further, both claimant and her mother stated that it became increasingly difficult for

claimant to focus on household tasks.  AR 53-54, 245, 272-76.  By 2012, it was difficult for

claimant to leave the house because she was afraid of people attacking her.  At the hearing,

claimant testified that she needed an "invisible shield" to "deflect toxic attacks from people."

AR 63-64.  As a result, it is hard to imagine how claimant's ability to garden in 2010, do some housework and walk her dog supports a conclusion that she was capable of full-time work, given her increasing symptoms and limitations.  Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer.").

In sum, I find that the administrative law judge failed to consider important evidence in the record that refutes his opinion and did not build an "accurate and logical bridge" between the evidence he cites and his decision with respect to claimant's credibility.  Castile v. Astrue, 617 F.3d 923, 929 (7th Cir. 2010); Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009).  As a result, I am remanding this case for further proceedings consistent with this opinion.

## B.  Statement of Maureen Geddes

Plaintiff argues that the administrative law judge failed to give proper consideration to the written statements of claimant's mother, Maureen Geddes, who described claimant as suffering from exhaustion, having great difficulty staying focused on household tasks, becoming overwhelmed and unstable with stress and experiencing increasing paranoia, even around family members.  AR 245 (May 15, 2011 statement) and 272-76 (November 8, 2012 statement).  In her 2012 statement, Maureen Geddes wrote that claimant felt "unsafe"

11

around her family and had trouble leaving the house because she thought people were attacking her. AR 273. The administrative law judge gave these statements little weight. AR 26.

The commissioner has established a regulatory framework that explains how an administrative law judge must evaluate opinion evidence from non-medical sources, a category that includes parents and friends. 20 C.F.R. §§ 404.1513(c), 416.927(c). Although such opinions cannot be used to establish an impairment, they are important. Social Security Ruling 06-03p explains that "[o]ften, these sources have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairment(s), activities, and level of functioning over a period of time." SSR 06-03p at *3. The ruling states that in considering such evidence, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." Id. at *6. As a general rule, the administrative law judge should explain the weight afforded to these opinions or otherwise discuss the evidence in sufficient detail to enable a subsequent reviewer to follow his decision. Id.

In this case, the administrative law judge initially found that Maureen Geddes was "inherently biased as a family member" and "has a financial interest in the claimant receiving benefits" because she helped her daughter financially. AR 26. These statements are too conclusory to support the administrative law judge's determination that Maureen Geddes was not credible. The administrative law judge's rationale that family members are

inherently biased is unconvincing; that could be said of anyone who knows or likes the claimant. Allord v. Barnhart, 455 F.3d 818, 821 (7th Cir. 2006) (criticizing adjudicator for not believing witness because "she'd been friendly" with claimant and noting "one doesn't casually conclude that one's friends are mentally ill").  Although defendant correctly points out that "[a] trier of fact is not required to ignore [a witness's] incentives in resolving issues of credibility," Cummins v. Schweiker, 670 F.2d 81, 84 (7th Cir. 1982), the record shows that Maureen Geddes provided only occasional financial support to claimant.  By itself, the seemingly minor benefit that Maureen Geddes stood to gain does not render her testimony incredible.

As a final rationale, the administrative law judge noted generally that Maureen Geddes's opinion was inconsistent "with the information in the objective medical findings." AR 26. As plaintiff argues, it is unclear what the inconsistencies the administrative law judge was referring to because he provided no further explanation or citations to the medical evidence. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001) (credibility determination erroneous where adjudicator referred to unexplained "inconsistencies with the objective medical evidence" and with "daily activities").  As discussed above, the progress notes from Brunner, Dr. Niazi and Dr. Brockmann confirm the symptoms that Maureen Geddes observed, especially in 2012.  By the end of 2011 and in 2012, claimant's providers noted repeatedly that claimant was struggling with maintaining concentration, with fatigue and with increasing paranoia.  All of claimant's providers and the state medical consultant, Dr.

13

Spear, reported that claimant's symptoms worsened when she was under stress. AR 342-44, 351 and 536-37.

Because the administrative law judge failed to discuss the evidence in sufficient detail, it is not possible to follow his reasoning.  On remand, he should take care to explain what medical findings he finds inconsistent with Maureen Geddes's opinions.

## C.  Treating Physician

Under the Social Security regulations, a treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 404.1527(d)(2); Campbell v. Astrue, 627 F.3d 299, 306 (7th Cir. 2010).   An administrative law judge must offer "good reasons" for discounting a treating physician's opinion. Id.  In this case, the administrative law judge gave two reasons for discounting Dr. Brockmann's findings:  (1) they took into account claimant's use of controlled substances, which he did not mention in his psychiatric records; and (2) they were inconsistent with his "unremarkable" examinations of claimant's mental status. AR 29.  He noted that unlike the medical expert, Dr. Brockmann had not reviewed all of the medical evidence before completing his report. AR 30.  Finally, the administrative law judge gave more weight to the opinions of the state agency consultants who have specialized knowledge in evaluating medical impairments under the Social Security Act.  Id.

14

The mental status examinations that Dr. Brockmann conducted in 2012 were in fact unremarkable. However, as explained above, Dr. Brockmann's progress notes and final assessment detailed a steady decline in claimant's condition in 2012. Although claimant may have presented well during her office visits, Dr. Brockmann expressed increasing concerns about her mental health throughout 2012. This is not surprising given the volatile nature of claimant's illness.

Of greatest concern is the administrative law judge's finding related to claimant's drug and alcohol abuse. The administrative law judge relied on medical records from 2009 to 2011 and the medical expert's review of those records in concluding that claimant's polysubstance abuse was in full remission. However, it is clear from Dr. Brockmann's November 2012 assessment that he believed that claimant was using methamphetamine and synthetic stimulants. Although Dr. Brockmann's earlier-dated progress notes do not mention substance abuse, it is clear that by November 2012, he thought that claimant had a serious problem. Both the medical expert and the administrative law judge ignored this fact altogether. At the hearing, claimant denied a history of regular drug and alcohol use in response to the administrative law judge's questioning. AR 52. However, no one addressed Dr. Brockmann's concerns from only a month earlier.

When drug and alcohol abuse is a suspected factor in a claimant's condition, an ALJ must determine "whether drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(2). In other words, the adjudicator must determine whether the claimant's would have the same physical or mental

limitations if she stopped using drugs or alcohol.  Id.  This requires a preliminary assessment of all of the claimant's impairments, including the drug and alcohol abuse.  Gritzmacher v. Astrue, 572 F. Supp. 2d 1051, 1059 (W.D. Wis. 2008).  If the claimant is found to be disabled when the substance abuse is included, the administrative law judge must then separate out non-substance-abuse impairments and determine whether the claimant would still be disabled without the drug and alcohol abuse.  Id.

On remand, the administrative judge should reconsider the findings of Dr. Brockmann, particularly those from November 2012, and if necessary, undertake the two-step assessment related to drug and alcohol abuse.  The administrative law judge should keep in mind, however, that the Court of Appeals for the Seventh Circuit has held that "the fact that substance abuse aggravated [claimant's] mental illness does not prove that the mental illness itself is not disabling."  Kangail v. Barnhart, 454 F.3d 627, 629 (7th Cir. 2006) (internal citations omitted).  "What is clear is . . . 'that bipolar disorder can precipitate substance abuse, for example as a means by which the sufferer tries to alleviate her symptoms.'"  Id.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying claimant Ann Geddes's application for disability insurance benefits and supplemental security income, is REVERSED and REMANDED

pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 23d day of April, 2014.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

17